UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORIENT EXPRESS CONTAINER CO., LTD., and OEC FREIGHT (NY) INC. (d/b/a OEC GROUP CHICAGO),<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>A.J. WORLDWIDE SERVICES INC.,<br><br>　　　　　　　Defendant. | Case No.<br><br>**COMPLAINT** |

　　　　Plaintiffs ORIENT EXPRESS CONTAINER CO., LTD. ("OEC") and OEC FRIEGHT (NY) INC. (d/b/a GROUP CHICAGO) ("OEC Chicago") (OEC and OEC Chicago, collectively, "OEC Group"), by and through undersigned counsel, as and for their complaint against Defendant, A.J. WORLDWIDE SERVICES INC. ("AJWW"), alleges as follows:

**INTRODUCTION**

　　　　1.　　This action arises from Defendant's nonpayment of rail and dock demurrage charges which Defendant was responsible for per the parties' contract or, alternatively, under the legal theory of unjust enrichment. OEC Group, a non-vessel operating common carrier ("NVOCC"), was retained by QUANTERM LOGISTICS VIETNAM CO., LTD ("Quanterm") and Defendant to coordinate the transportation of two containers of cargo from Vietnam to the United States, pursuant to a contract of carriage. Upon the containers' arrival in the United States, their contents were detained and denied entry by U.S. customs authorities. During the period in which the cargo awaited exportation or destruction, it incurred substantial rail and equipment demurrage charges.

1

2. Pursuant to the parties' contract of carriage, Defendant was obligated to pay these charges and any expenses associated with the detention of the cargo by customs authorities.

3. Defendant neglected to pay any of the aforementioned expenses, leaving OEC Group with no recourse but to pay the demurrage on Defendant's behalf. OEC Group brings this action against Defendant to recover the owed amounts.

## JURISDICTION

4. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1333 because this case arises out a contract for carriage of goods by sea in international commerce. This action is being filed under Rule 9(h) of the Federal Rules of Civil Procedure

5. This Court has personal jurisdiction over Defendant because the Bill (as defined in Paragraph 15 below) references and incorporates OEC Group's Terms and Conditions (a copy of the Bill alongside the Terms and Conditions is attached hereto and incorporated herein as ***Exhibit 1***) providing that all disputes under or in connection with the Bill shall be determined by this Court. *Exhibit 1* ¶24.

6. Venue is proper in this district for the same reason: Defendant agreed to litigate any dispute in the United States District Court for the Southern District of New York. *See id.*

## PARTIES

7. Plaintiff ORIENT EXPRESS CONTAINER CO., LTD. ("OEC") is a foreign business entity, organized under the laws of the British Virgin Islands, with its registered office at 30 de Castro Street, Road Town, Tortola, British Virgin Islands, and with its principal place of business at 7F, 131, Sec 3, Nanking E. Rd., Taipei 104 Taiwan.

8. Plaintiff OEC FREIGHT (NY) INC. (d/b/a OEC GROUP CHICAGO) ("OEC Chicago"), is a New York corporation with its principal place of business in Rosedale, Queens County, New York.

9. OEC issued, or had issued on its behalf as carrier, the Bill with Defendant listed as consignee on the Bill.

10. At all times relevant to this action, OEC Chicago acted as agent for OEC.

11. On information and belief, Defendant A.J. WORLDWIDE SERVICES INC. is a New Jersey corporation with its principal place of business at 901 Penhorn Avenue, Unit 6, Secaucus, New Jersey, 07094.

## FACTUAL BACKGROUND

12. OEC Group is in the shipping, logistics, and transportation business.

13. Specifically, OEC Group is an NVOCC, and as such, issues bills of lading to customers as contracts of carriage.

14. Defendant engaged OEC Group to facilitate the shipment of two containers, numbers APZU3828600 and UETU2328412 (the "Cargo"), to the United States.

15. On or about April 18, 2023, OEC, as carrier, issued to Quanterm, as shipper, and AJWW, as consignee, bill of lading No. OERT175718M00329 (the "Bill of Lading" or the "Bill") for shipment of the cargo, via OEC Chicago as agent for OEC.

16. The Bill was issued pursuant to OEC's Terms and Conditions (the "Terms and Conditions") (the Bill of Lading and the Terms of Conditions incorporated therein, together the "Contract of Carriage").

17. The Contract of Carriage's primary objective was the carriage of the Cargo by sea to the United States.

18. The Cargo was safely discharged at Port of Savannah, a port in the United States, pursuant to the Contract of Carriage.

19. From there, the Cargo was transported to its place of delivery, that being Atlanta, Georgia, where it was detained by U.S. Customs and Border Protection.

20. The Cargo was detained at the rail yard in Atlanta from approximately June 12, 2023, to November 17, 2023. During that time, it incurred charges and fees totaling $107,800 and itemized as follows:

   a. $94,800 in rail demurrage; and

   b. $13,000 in equipment demurrage.

21. Defendant ultimately abandoned the Cargo and refused to take responsibility for demurrage payments despite repeated demands from OEC Group.

22. Due to Defendant's refusal to take responsibility for the Cargo and eventual abandonment of it, OEC Group was forced to arrange for destruction of the Cargo and to pay both the rail and equipment demurrage.

23. Because Defendant refused to take responsibility for either the rail or equipment demurrage payments, OEC Group paid these charges on their behalf, which totaled $107,800.

24. Despite repeated demands, Defendant failed to compensate OEC Group for any amounts paid by OEC Group for demurrage on the containers.

## THE CONTRACT OF CARRIAGE

25. The Terms and Conditions define "Carrier" as the company named on the face of the bill of lading.

26. The Terms and Conditions define "Merchant" to include both the "shipper" and the "consignee" on the bill of lading.

27. The Terms and Conditions define "Charges" as "freight, deadfreight, demurrage and all expenses and money obligations incurred and payable by the Merchant."

28. Clause 1 of the Terms and Conditions provide that Merchant is "jointly and severally liable to the Carrier for the payment of all Charges."

29. Pursuant to Clause 7(b) of the Terms and Conditions (*Merchant's Responsibility: Description of Goods*), Merchant warrants that:

> . . . it has complied with all applicable laws, regulations and requirements of Customs, port and other authorities and shall bear and pay all . . . fines, imposts, expenses, and losses incurred or suffered by reason thereof or by reason of any illegal, incorrect or insufficient marking, numbering, addressing or any other particulars relative to the Goods.

30. Pursuant to Clause 7(e) of the Terms and Conditions (*Merchant's Responsibility: Description of Goods*), Merchant undertakes to be liable for and to indemnify Carrier:

> . . . for demurrage on Containers and any payment, expense, fine, dues, duty, tax, impost, loss, damage or detention sustained or incurred by or levied upon the Carrier, Vessel, Goods, Containers, or other packages and for any action or requirement of any government or governmental authority or person purporting to act under the authority thereof, seizure under legal process or attempted seizure, incorrect or insufficient marking, numbering or addressing of Containers or other packages or description of the contents, failure of the Merchant to procure consular, Board of Health or other certificates to accompany the Goods or to comply with laws or regulations or any kind imposed with respect to the Goods by the authorities at any port of place or any act or omission of the Merchant.

31. Pursuant to Clause 7(f) of the Terms and Conditions (*Merchant's Responsibility: Description of Goods*), Merchant undertakes to:

> . . . be liable for all loss, damage and/or expense of any kind whatsoever, including but not limited to contamination, soiling, detention and demurrage before, during and after the Carriage of property (including but not limited to Containers) . . . caused by the Merchant or any person acting on its behalf or for which the Merchant is otherwise responsible.

32. Under Clause 7(g) of the Terms and Conditions *(Merchant's Responsibility: Description of Goods)* Merchant obligates itself to "defend, indemnify, and hold harmless the

Carrier against any loss, damage, claim, liability or expense whatsoever arising from any breach of the provisions of this Clause 7 or from any cause in connection with the Goods for which the Carrier is not ultimately responsible."

## COUNT ONE – BREACH OF CONTRACT

33. Paragraphs 1 through 32 of this Complaint are repeated and realleged as if the same were set forth herein.

34. OEC Group and Defendant were parties to a valid contract of carriage for the shipment of the Cargo.

35. OEC Group is the company named on the face of the Bill, and accordingly is the Carrier under the Contract of Carriage.

36. The Bill identifies AJWW as the consignee of the Cargo, and accordingly, AJWW is a Merchant under the Contract of Carriage.

37. OEC duly performed all duties on its part pursuant to the Contract of Carriage.

38. Defendant failed to ensure that the Cargo complied with all applicable laws, regulations and requirements of Customs, port and other authorities and thus violated Clause 7(b) of the Terms and Conditions.

39. Defendant caused the Cargo to be denied entry into the United States and to incur demurrage while it was detained.

40. Defendant failed to export or otherwise dispose of the Cargo in a timely manner, which also caused the Cargo to incur additional demurrage.

41. Defendant refused to pay the demurrage, and as a result, OEC was left with no recourse but to pay these charges and fees on their behalf.

**Defendant's Breach of Clause 7(b)**

42. Defendant, as Merchant, breached its warranty with respect to the compliance of the Cargo with applicable laws and regulations, and pursuant to the Contract of Carriage's terms, must pay any expenses incurred by reason thereof, including demurrage.

**Defendant's Breach of Clause 7(e)**

43. Defendant, as Merchant, breached its obligation to pay for, and to indemnify OEC Group for, demurrage levied on the Cargo.

**Defendant's Breach of Clause 7(f)**

44. Defendant, as Merchant, breached its obligation to pay for costs, expenses, payments, and losses, including demurrage, arising from or out of any act or omission of the Merchant.

**Defendant's Breach of Clause 7(g)**

45. Defendant breached the forgoing clauses, and accordingly, is liable to OEC Group for the full extent of any loss, damage, claim, liability, and/or expense incurred by OEC Group, including for the full extent of demurrage paid by OEC Group.

46. By failing to pay the amounts owed to OEC Group, Defendant breached the maritime contract under the applicable laws of the United States and caused loss to OEC Group in the amount of at least $107,800 plus attorney fees.

## COUNT TWO – UNJUST ENRICHMENT

47. OEC Group incorporates paragraphs 1 through 32 as if fully set forth herein and pleads this Count Two for Unjust Enrichment in the alternative, should this Court find that no contract between the parties existed.

48. OEC Group conferred benefits on Defendant by paying costs and expenses related to the Cargo, including, but not necessarily limited to, demurrage on the Cargo.

49. Defendant had knowledge of such benefits and voluntarily accepted them for its own benefit and enrichment.

50. The true and reasonable value for these costs incurred by OEC Group is at least $107,800.

51. Defendant failed to compensate OEC Group for the value of the demurrage costs provided to Defendant in the principal amount of $107,800.

52. Defendant was unjustly enriched by its inequitable action of obtaining benefits without paying for them.

53. As a result of the foregoing, OEC has been damaged and demands judgment in an amount unknown at this time but believed to be more than $107,800.

**WHEREFORE**, OEC Group prays for the following:

(A) That process in due form of law issue against Defendant citing it to appear and answer under oath all and singular the matters alleged in this Complaint, failing which default judgement be entered against Defendant A.J. WORLDWIDE SERVICES INC. in the sum of $107,800, plus interest.

(B) That OEC Group have judgement against Defendant in an amount to be shown at trial but currently approximating $107,800 plus interest;

(C) That this Court retain jurisdiction over this matter through the entry of any judgement or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

(D) That this Court award OEC Group its attorneys' fees and costs incurred in this action; and

(E) For such other and further relief as the Court deems just and proper.

Dated: February 8, 2024
New York, New York

Respectfully submitted,

**ZEILER FLOYD ZADKOVICH (US) LLP**

By: /s/ *Zachary J. Barger*

Luke Zadkovich
Zachary J. Barger
33 East 33rd Street, Suite 905
New York, NY 10016
zach.barger@zeilerfloydzad.com
*Attorneys for Plaintiffs,*
*Orient Express Container Co., Ltd. & OEC Group Chicago*